### CEBALLOS v. UNITED STATES.

### LEE TAI LUNG v. SAME.

(Circuit Court of Appeals, Second Circuit. March 23, 1906.)

#### Nos. 66 and 267.

CUSTOMS DUTIES—MEASUREMENT—OLIVES—"GALLON."
  Under Tariff Act July 24, 1897, c. 11, § 1, Schedule G, par. 264, 30 Stat. 171 [U. S. Comp. St. 1901, p. 1651], imposing a duty at various rates "per gallon," according to condition, the duty should be assessed on the basis of the wine or liquid gallon and not the dry gallon, regardless of whether the olives are imported dried or in brine.

Appeals from the Circuit Court of the United States for the Southern District of New York.

For decision below in the Ceballos Case, see 139 Fed. 705. In the Lee Tai Lung Case there was no opinion. The decisions covered by these appeals affirmed two decisions of the Board of United States General Appraisers, G. A. 5,701 (T. D. 25,359) and G. A. 6,221 (T. D. 26,888), which had affirmed the assessment of duty by the collector of customs at the port of New York. The opinion of the Board in the former case is set forth in the report of the Circuit Court decision in the Ceballos Case (C. C.) 139 Fed. 705, supra. The opinion of the Board in the latter case is as follows:

WAITE, General Appraiser. The importation in this case consists of five boxes of dried olives imported from China. They were assessed for duty at 15 cents per gallon, under the following provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule G, par. 264, 30 Stat. 171 [U. S. Comp. St. 1901, p. 1651]: "(264) * * * Olives, green or prepared, in bottles, jars, or similar packages, twenty-five cents per gallon; in casks or otherwise than in bottles, jars, or similar packages, fifteen cents per gallon."

There appears to be no dispute that the goods were correctly classified under paragraph 264, the only question raised relating to whether they should be assessed upon the basis of the gallon of liquid measure, containing 231 cubic inches, which was used by the customs officers, or the gallon of dry measure, presumably that containing 268.8 cubic inches, which the importer claims should be applied. Additional information derived from the record in this case and from other sources confirms the opinion expressed by the board in the Ceballos Case (G. A. 5.701, T. D. 25,359), affirmed by the Circuit Court in Ceballos v. U. S. (C. C.) 139 Fed. 705 (T. D. 25,879), namely, that the customs gallon of the United States is the wine gallon of 231 cubic inches, if, indeed, that is not the only gallon in general use in the commerce of this country. While it appears that Congress, under its constitutional authority to "fix the standard of weights and measures" (article 1, § 8, Const.), has never in terms formulated a system of standard weights and measures for the United States, there has been practically a legislative adoption of certain standards in use, including the wine gallon of 231 cubic inches, but not, so far as we are informed, the dry gallon. The history of this legislation and the related facts are summarized in a compilation issued by the Bureau of Standards of the Department of Commerce and Labor, entitled "Laws concerning the weights and measures of the United States," from which we quote (page vii): "At the time of the American Revolution the weights and measures in common use were of English origin. Most of them had been procured from time to time by the colonies from Great Britain, and although it was well known that there were variations in the weights and measures of the same denomination throughout the states, it was not until 1830 that the matter received attention from Congress. At this time an investigation of the weights and measures in use in the various custom houses was ordered by a resolution of the Senate. As a result of this investigation, the avoirdupois pound, the English yard, the wine gallon of 231 cubic inches, and bushel of 2,150.42 cubic inches were adopted by the Treasury Department, and the construction of copies of the standards thus established was immediately undertaken, in order to supply the custom houses with uniform weights and measures. In 1836 a joint resolution of Congress directed the Secretary of the Treasury to deliver to the governor of each state in the Union a complete set of all the weights and measures adopted as standards by the department, to the end that a uniform standard of weights and measures might be established throughout the United States. Nearly all of the states have been supplied with complete sets of standards, in accordance with the resolution mentioned, and in many cases they have been adopted by legislative action as the standards of the state." The joint resolution of 1836 referred to is found in 5 Stat. 133, and reads as follows:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury be, and he hereby is directed to cause a complete set of all the weights and measures adopted as standards and now either made or in the progress of manufacture for the use of the several custom-houses, and for other purposes, to be delivered to the Governor of each state in the Union, or such person as he may appoint, for the use of the states respectively, to the end that an uniform standard of weights and measures may be established throughout the United States.

"Approved June 14, 1836."

This statute appears to be a legislative recognition of the standards adopted in the investigation of 1830. A later act (that of August 18, 1894, c. 301, 28 Stat. 383 [U. S. Comp. St. 1901, p. 2382]), directs the Secretary of the Treasury, who then had supervision of such matters, "to furnish precise

copies of standard weights and measures to * * * any state, territory, or institution not heretofore furnished with the same, upon application in writing," etc. By act of March 3, 1901, c. 872, 31 Stat. 1449 [U. S. Comp. St. 1901, p. 2383], Congress created the National Bureau of Standards, section 2 of which provides, among other things, "that the functions of the bureau shall consist in the custody of the standards, the comparison of the standards used in scientific investigations, engineering, manufacturing, commerce, and educational institutions with the standards adopted or recognized by the government; the construction, when necessary, of standards, their multiples and subdivisions; * * * the solution of problems which arise in connection with standards. * * * The Board has before it a certificate, under the signature of the director of the Bureau of Standards, and the seal of the Bureau, containing a list of standard weights and measures adopted by the Treasury Department, copies of which have, from time to time, been transmitted to the Governors of the several states of the Union, pursuant to the joint resolution of June 14, 1836, and the act of August 18, 1894. The only gallon mentioned in this schedule is the gallon of 231 cubic inches capacity. The state statutes printed in the compilation above quoted show that at least 38 out of the 45 states in the Union have by law expressly adopted the weights and measures prescribed by the federal government. In many instances these statutes specifically include the wine gallon, but in only three states, apparently, is there any legislative reference to such a unit of measure as the dry gallon. These states are Connecticut and Wisconsin, which provide for a dry gallon of 282 cubic inches capacity, and Minnesota, which provides for a dry gallon of 268.8 cubic inches capacity.

From the foregoing review of legislation and official action upon this subject, it is apparent that the only gallon which has ever been "adopted or recognized" as a standard by the federal government is the wine gallon of 231 cubic inches. We are clearly of the opinion that this is the gallon referred to in paragraph 264. It is not shown that there is any such objection to measuring a dry substance like the goods in controversy by the liquid gallon as would make the construction of paragraph 264, adopted by the customs officers, unjust, unreasonable, or absurd. It is true the term "gallon" imports a liquid measure, and the commodity in question is of such a nature that it might be measured by dry measure. Still, as no measure is designated by the tariff in connection with the importation of olives except the gallon, and it has always been the practice of the custom house to measure dry olives by the liquid gallon, we think that practice should maintain. The construction placed upon the law by the officers who administer it frequently influences the construction given it by the courts. Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32 L. Ed. 269. It is improbable that the word "gallon," as used in paragraph 264, means one unit of quantity when the olives are dried, and quite another when they are in brine or liquid. Ceballos v. U. S., supra.

We hold that the gauge of dried olives must be made by the gallon of 231 cubic inches, and overrule the protest, affirming the collector's decision.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for the importer.

Henry A. Wise, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

PER CURIAM. Affirmed, on the opinion of the Board of General Appraisers.